Attorney General Edmondson has asked me to respond to your request for an informal opinion as to your questions which are restated as follows:
 1. For many years the Oklahoma Student Loan Authority has paid its President, who manages the Authority, a fixed amount as an expense account. This account is to be used to pay his expenses in promoting the activities of the Authority and other business-related expenses. The Board of Trustees does not require him to document these expenditures. Would this expense account be considered as a part of his salary for purposes of the salary limits in 74 O.S. 3601 of Title 74?
 2. If the Oklahoma Student Loan Authority provided deferred compensation to the President of the Authority, payable to the President after he leaves office, would those payments be considered as salary pursuant to 74 O.S. 3601 of Title 74? If the payments are part of his salary, would the payments be considered as salary when the President actually receives the payments, or at some other time?
The discussion which follows is not an official opinion of the Attorney General. Rather, the following analysis and conclusions are those of the undersigned attorney.
I have reviewed the Oklahoma Student Loan Act, 70 O.S. 695.1 (1991) et seq., which authorizes the creation of the Oklahoma Student Loan Authority as a public trust with the State of Oklahoma as its beneficiary, and 74 O.S. 3601 (1994). For each agency, board, or program listed in 3601 there are corresponding limitations on the use of fulltime equivalent employees (FTE's) and on the salary of the chief executive officer. As to the latter, subsection B of 3601 states, in part:
 "The salary of the chief executive officer for each of the following agencies. . . or programs shall not exceed the amount specified, per annum, payable monthly, for the fiscal year ending June 30, 1995."
(Emphasis added.)
Please be advised that the Legislature amends 3601.B each year as part of its general budget process. It should be noted that the agencies, boards or programs listed therein do not receive funds appropriated by the Legislature; rather they each have separate sources of funding.
The Oklahoma Statutes do not define the word "salary". In such situations, 25 O.S. 1 (1991) provides that "words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears." Webster's New International Dictionary 2203 (2nd ed. 1961) defines salary as follows:
 "The recompense or consideration paid, or stipulated to be paid, to a person at regular intervals for services, especially to holders of official, executive, or clerical positions; fixed compensation regularly paid, as by the year, quarter, month, or week; stipend — now often distinguished from wages."
The salaries identified in 3601 are stated on a fiscal year basis and are to be paid monthly. It is my opinion that this annualized amount is the maximum gross salary or compensation that the officer may receive for the services rendered by him or her during the fiscal year.
As to your first question, you have stated that the authority's president is paid a fixed amount for expenses in promoting the activities of the authority and other business related expenses, and that the Board of Trustees does not require him to document these expenditures. It appears to me to be the intent of the Legislature by its use of 3601 to limit or control the use of personnel resources by the identified agencies, boards or programs. The 1994 Legislature set a maximum annual salary for the chief executive officer of the Student Loan Authority at $90,741.00.
Although our interpretation of 3601 must stand on its own under Oklahoma law, I believe a review of the federal income tax consequences is helpful. Pursuant to the Internal Revenue Code (26 U.S.C.A. 62(c)) and I.R.S. regulations 1.62-2(c), an employee may exclude from income, job-connected expenses paid or incurred by the employee in connection with the performance by him of services as an employee, which are reimbursed to him under a reimbursement or other expense allowance arrangement with his employer. Such an arrangement which meets the following three requirements is known as an "accountable plan":
(1) A business connection,
(2) Substantiation, and
(3) Return of amounts in excess of expenses.
On the other hand, an arrangement that does not satisfy these requirements is known as a "non-accountable plan". Payments under an accountable plan do not have to be reported on the employee's W-2 form or included by the employee in income. However, amounts paid under a non-accountable plan must be reported on the employee's W-2 form and included by the employee in income. (33 Am Jur 2d Federal Taxation 1 1096, 1097 (1993). The authority's plan of paying a fixed sum for undocumented expenses to its president is a non-accountable plan for federal income tax purposes; and all such payments must be reported as income in the authority's W-2 form to the employee.
Also, I have reviewed Spearman v. Williams, 415 P.2d 597
(Okla. 1966), in which the Oklahoma Supreme Court reviewed the power of the Legislature to provide by statute for members of the Legislature to receive office and traveling expenses in addition to the compensation provided for members of the Legislature in Article V , Section 21 of the Oklahoma Constitution and the limitation that no salary or emoluments of any public official be changed after his election or appointment as provided in Article xxiii , Section 10 of the Oklahoma Constitution. The Supreme Court at page 602 found "nothing in these constitutional provisions and terms that negatives or conflicts with the allowance of reasonable expenses incurred in the discharge of official duties. . . . (I)t is the allowance of personal expenses that violates the constitutional limitation." The Court concluded that "such office and traveling expenses incurred by members of the Legislative Council are expenses of the performance of official duties and are not compensation, salary or emoluments, within the meaning of Article V , Section 21/Article XXIII , Section 10 of the Constitution."
It is my opinion that this ruling is not binding on your question, because the Court in Spearman is reviewing the power of the Legislature to act as a separate constitutional branch of state government, and the Court is deferring in part to the wisdom and judgment of the Legislature itself, as is seen in its analysis at page 602:
 What are proper legislative expenses, in order to enable the body to function as not only a lawmaking body, but an inquisitorial body, and whatever amount in its judgment is necessary therefore under the prevailing conditions of life, is a matter within the determination of the Legislature, and over which the courts can and would exercise no control.
However, the distinction made in Spearman, supra, between (i) reasonable expenses incurred in the discharge of official duties and (ii) the allowance of personal expenses is useful here. To the undersigned, expenses not shown to be incurred in the performance of the president's official duties must be deemed personal in nature, and the payment of such personal expenses by the agency constitutes compensation, salary or emolument. See Spearman, at 601, 602.
Therefore, it is the opinion of the undersigned that a fixed amount paid to the authority's president for undocumented expenses should be considered as personal compensation and subject to the salary limitation of 74 O.S. 3601 (1994) in the year such expense is incurred.
Your second question inquires as to whether compensation deferred to a future period would be subject to the 3601 salary limitation. Use of deferred compensation arrangements arises out of the desire to reduce an employee's federal and state income taxes by postponing the actual receipt of part of his or her earned income to future years (possibly beyond the current employment relationship) when it is anticipated that lower personal income tax rates might apply. 33 Am.Jur. 2d Federal Taxation 11 3101, 3102 (1993). Deferred compensation is thus a creature of the income tax laws. However, the salary owed to the authority's president is a recompense for the services performed during the current fiscal year.
Therefore, it is my opinion that any compensation deferred to a future period must be counted against the salary limitation of 3601 for the year in which the personal services are performed, and not for the subsequent year in which it is paid.
(John M. Crittenden)